FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2018 DEC 18 AM 4:37

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY



**U.S. Department of Justice**
*United States Attorney*
*District of Maryland*

Ayn B. Ducao
*Assistant United States Attorney*
Ayn.Ducao@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4819
MAIN: 410-209-4800
FAX: 410-962-3091

November 5, 2018

Michael D. Montemarano, Esquire
3826 Paul Mill Rd
Suite 204
Ellicott City, MD 21042

      Re:    <u>United States v. Kenneth Brian Fischer</u>, Criminal No. RDB-18-0100

Dear Mr. Montemarano:

      This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Kenneth Brian Fischer (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by October 25, 2018, it will be deemed withdrawn. The terms of the Agreement are as follows:

<u>Offense of Conviction</u> *Superseding* [handwritten initials]

1.    The Defendant agrees to plead guilty to Count One of the ~~I~~ndictment now pending against him, which charges him with Production of Child Pornography, in violation of 18 U.S.C. § 2251(a). The Defendant admits that the Defendant is, in fact, guilty of the offenses and will so advise the Court.

<u>Elements of the Offense</u>

2.    The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

    a.    That on or about the time alleged in the Indictment, in whole or in part in the District of Maryland,

    b.    The victim was under the age of eighteen;

c. The defendant used, employed, persuaded, induced, enticed or coerced the victim to take part in sexually explicit conduct for the purpose of producing or transmitting a visual depiction of that conduct; and

d. The visual depiction was mailed or actually transported or transmitted in or affecting interstate or foreign commerce; or that the defendant knew or had reason to know that the visual depiction would be mailed or transported or transmitted in or affecting interstate or foreign commerce; or that the visual depiction was produced using materials that had been mailed or transported in or affecting interstate or foreign commerce.

Penalties

3. The maximum penalty provided by statute for the offense to which the Defendant is pleading guilty are as follows:

| COUNT | STATUTE | MAND. MIN. IMPRISON-MENT | MAX IMPRISON-MENT | MAX SUPERVISED RELEASE | MAX FINE | SPECIAL ASSESSMENT |
|---|---|---|---|---|---|---|
| One | 18 U.S.C. § 2251(a) | 15 years | 30 years | Lifetime | $250,000 | $100 and $5,000 (see below) |

a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment up to the entire original term of supervised release if permitted by statute, followed by an additional term of supervised release.

c. Restitution: The Court shall order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, 3664 and § 2259.

d. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

e. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant

agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

g. Additional Special Assessment: the Defendant must also pay an additional special assessment of $5,000, unless the defendant is indigent, pursuant to 18 U.S.C. § 3014.

### Waiver of Rights

4. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein, and to the following applicable sentencing guidelines factors:

**Count One (Production of Child Pornography)**

a. The base offense level is thirty-two (32) pursuant to U.S.S.G. § 2G2.1(a).

b. Pursuant to U.S.S.G. § 2G2.1(b)(2)(A), there is a two (2) level increase because there was the commission of a sexual act or sexual conduct.

    c.    **ABUSE OF POSITION OF TRUST**: This Office believes that the Defendant abused a position of trust – specifically his role as a teacher – and so there is a two (2) level increase under U.S.S.G. § 3B1.3. The Defendant does not believe that this enhancement applies.

    d.    Thus, the adjusted offense level for Count One (Group One) is either 34 or 36.

    e.    **RELEVANT CONDUCT**: The stipulated statement of facts sets forth numerous instances of illegal sexual contact with minors and the production of child pornography as described in Counts Two through Eight of the Superseding Indictment. A plea agreement containing a stipulation that specifically establishes the commission of additional offense shall be treated as if the defendant had been convicted of additional count charging those offenses. U.S.S.G. § 1B.2.

    f.    **GROUPING – MULTIPLE COUNT RULES**

        (1)    Count One is the highest offense level at 36 or 34 and counts as one unit.

        (2)    Each instance of illegal sexual contact with each of the minors as described in the statement of facts and as charged in the indictment (Counts One through Eight) is a separate group (with the exception that Counts One and Two group because they involve the same victim; and Counts Four and Six also group because they involve the same victim) and this Office believes that the guidelines for each range from 32 to 36.

        (3)    Applying the Multiple Count Rules in Chapter 3, there are far more than 5 units and the increase in offense level is by five (5) levels.

        (4)    Thus, the adjusted offense level at this point is either 39 or 41.

    g.    **ACCEPTANCE**

This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office will make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty. Accordingly, after acceptance of responsibility, the adjusted offense level is 36 or 38.

    h.    **REPEAT SEX OFFENDER AGAINST MINORS:** Pursuant to U.S.S.G. §4B1.5(b), there is a five (5) level increase because the Defendant engaged in a pattern of activity involving prohibited sexual conduct.

**Thus, the final adjusted offense level is either 41 or 43.**

7. There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

8. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Rule 11 (c) (1) (C) Plea

9. The parties reach this agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). The government agrees that a sentence no greater than **25 years imprisonment** in the custody of the Bureau of Prisons is the appropriate disposition of this case taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a). This Agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void. Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). The parties agree that if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the Government will be bound by the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw his plea.

## Obligations of the Parties

10. At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office reserves the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office deems relevant to sentencing, including the conduct that is the subject of any counts of the Superseding Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

## Waiver of Appeal

11. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground

that the statute to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute.

b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

(i) The Defendant reserves the right to appeal any sentence that exceeds the 25 years imprisonment; and

(ii) This Office reserves the right to appeal any sentence below the statutory minimum of 15 years imprisonment.

c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

Restitution

12. Pursuant to 18 U.S.C. § 3663(a)(3), 18 U.S.C. § 3663A(a) & (b), 18 U.S.C. § 3664, and 18 U.S.C. § 2259, the Defendant agrees to make full restitution to all minor victims of his offenses as to all counts charged, whether or not the Defendant enters a plea of guilty to such counts and whether or not such counts are dismissed pursuant to this agreement. Further, the Defendant agrees to pay restitution to any of his minor victims, for the entire scope of his criminal conduct, including but not limited to all matters included as relevant conduct. The Defendant acknowledges and agrees that this criminal conduct (or relevant conduct) includes any minor victim of any child pornography offenses, charged or uncharged, under Chapter 110, United States Code, and any minor victim of any violation of federal and/or state law committed by the Defendant, including any contact sexual offense. Further, pursuant to 18 U.S.C. § 3664(d)(5), the Defendant agrees not to oppose bifurcation of the sentencing hearing if the victims' losses are not ascertainable prior to sentencing.

13. The Defendant agrees to the entry of a restitution order for the full amount of the victims' losses. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. The Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information

(including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

Forfeiture

14. a. The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

b. Specifically, but without limitation on the government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities: (1) an Apple iPhone 7, model A1778, serial number F17T2Y5FHG7K; and (2) a black Apple iPhone 3, 16GB, model A1303, #579C-A1303B.

c. The Defendant agrees to consent to the entry of orders of forfeiture for the property described in the two above subparagraphs and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

d. The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

e. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

Case 1:18-cr-00100-RDB Document 40 Filed 12/18/18 Page 9 of 13

### Sex Offender Registration

15. The Defendant understands and agrees that, as a consequence of the Defendant's conviction for the crimes to which the Defendant is pleading guilty, the Defendant will be required to register as a sex offender in the place where the Defendant resides, is an employee, and is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of the Defendant's residence. Failure to do so may subject the Defendant to new charges pursuant to 18 U.S.C. § 2250.

### Defendant's Conduct Prior to Sentencing and Breach

16. a. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

b. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement.

### Entire Agreement

17. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

Rev. August 2018                                                9

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

> Very truly yours,
>
> Robert K. Hur
> United States Attorney
>
> By: ___/s/_____
> Ayn B. Ducao
> Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

__11/7/18__  
Date

_____  
Kenneth Brian Fischer

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

__11/7/18__  
Date

_____  
Michael D. Montemarano, Esquire

## ATTACHMENT A - STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Kenneth Brian Fischer (the "Defendant"), age 40, is a Westminster, Maryland resident. On August 31, 2017, a Fairfax County, Virginia Police Detective was online in an undercover capacity posing as a fourteen-year-old male living in the Centreville area of Fairfax County on a geosocial networking application geared toward gay and bisexual men, when he received a message from a subject, later identified as the Defendant, which said, "What grade you in". The detective did not observe this message until September 1, 2017, at which time a conversation dialog started between the detective and the Defendant. The detective told the Defendant that he was a 14-year-old male who was in 9th grade at a local high school. The Defendant identified himself to the detective as "Ken," stated he was 37 years old and sent a picture of himself, with his face visible, wearing a red ball cap and a yellow t-shirt.

During a conversation on September 1, 2017, the message interaction between the detective and the Defendant became sexual, with the Defendant asking the detective if he was a "Top or btm", and if he was a virgin. The Defendant stated "I like boys your age" and "14-year-old is my fantasy." The Defendant asked the detective if he wanted to meet to engage in sex, and requested to "trade x pics?" with the detective. After being told that the detective did not possess any x-rated pictures, the Defendant sent the detective four images of an erect penis and talked more about engaging in oral and anal sex with the U detective C. The Defendant stated, "show me your ass. Or you shirtless."

The detective told the Defendant that he was scared (in regards to meeting to engage in sex), to which the Defendant replied, "How can I help" / "I mean. I'm a teacher" / "If I did anything wrong you'd get me fired and arrested." The Defendant also sent the detective an image of an adult male, wearing a green shirt with white lettering, exposing his nude, erect penis. The face of this individual was not visible in the image.

As an investigative measure, the detective requested to chat on a different smartphone application. The Defendant provided the screen name of "Alexf416" as a way of contacting him on the social media application Kik. The conversation was moved to Kik on September 4, 2017. Once on Kik, the Defendant tried again to arrange to meet with the detective. The Defendant requested the detective provide pictures of himself or video and, when the detective refused, Fischer stated, "It's pretty standard to trade pics."

In September 2017, Kik complied with court process and provided internet protocol (IP) address records associated with the user of the "alexf416" account, which resolved back to Comcast. Comcast also complied with court process and identified the subscriber associated with the IP address identified by Kik as being used by "alexf416" as Kenneth Fischer, 878 Amherst Lane, Westminster, Maryland.

1

Database checks, including through the Maryland Department of Assessments and Taxation and the Maryland Motor Vehicle Administration, confirmed the Defendant and his wife were the owners of 878 Amherst Lane, Westminster, Maryland and that the Defendant was employed as a teacher at West Middle School, located in Westminster, Maryland. The Defendant matched the image of the adult male in the red ball cap and yellow t-shirt sent to the detective on August 31, 2017.

On September 13, 2017, law enforcement executed a duly authorized search warrant at the Defendant's residence, 878 Amherst Lane, Westminster, Maryland 21158 and seized numerous digital items, including an iPhone 7 and a green t-shirt with white lettering that matches the t-shirt worn by the individual exposing his penis in the image sent to the detective on September 1, 2017.

The Defendant waived his Miranda rights and consented to an interview, which was audio recorded. The Defendant admitted to communicating online with the detective as described above, to having sexual contact with several minors over a five-year period and exchanging sexually explicit pictures with minors. The Defendant stated that in 2013 or 2014, he started meeting underage males in person after meeting them online. The Defendant stated that he has used his Tumblr account to look for young boy pornography and that everything the investigators were looking for would be located on his cell phone.

The Defendant was arrested and voluntarily agreed to take a polygraph examination administered to determine if the Defendant had committed any additional hands-on sexual offenses with minors. On September 13, 2017, a Maryland State Police polygraph examiner met with the Defendant and again advised him of his Miranda warnings. Fischer again waived his rights, agreeing to both a pre-polygraph interview and polygraph examination.

The pre-polygraph interview was audio and video recorded. The Defendant stated the following. He was attracted to males ages 15 to 19 and that he gave in to that attraction. He used the internet to both send and receive sexually explicit images to/from at least ten minors under the age of 18 years. He used the internet as a means to meet and engage in sex acts with approximately seven minors under the age of 18 years. He admitted to engaging in live video masturbation with approximately seven minor males.

The Defendant also admitted to meeting a 15-year-old male from Pennsylvania in which they exchanged nude photographs and the Defendant drove to the 15-year-old's residence and engaged in anal sex in the Defendant's vehicle. He admitted he met John Doe 1 when John Doe 1 was 15-years-old, online and driving to John Doe 1's residence located in Maryland where the Defendant filmed himself and John Doe 1 masturbating each other.

On January 24, 2018, the Defendant's wife told the FBI that on January 21, 2018, she viewed the Defendant's email account emti1205@hotmail.com and observed emails in the sent folder that dated back to 2007. The emails she viewed appeared to regarding "Craig's List hook-ups." She also observed emails with attached pictures of high school or younger aged males and depicted both clothed males and of exposed penises. The wife specifically recalled observing an email that the Defendant sent to himself that contained two videos. In the video, a male was

fondling another male. The wife could not see the face of who was fondling the second male; however, she stated that she could tell it was the Defendant in the video.

A search warrant was obtained to search the email account emti1205@hotmail.com and two videos and four images were located that depict the Defendant and John Doe 1 mutually masturbating each other in John Doe 1's residence. The Defendant is taking the videos and pictures of the sexually explicit conduct. The videos and images were created on or about November 15, 2014.

The Defendant's devices, including his iPhones were searched pursuant to search warrants. On his iPhone, a large volume of Grindr, another social media application, and Kik messages were recovered in which the Defendant was in contact with a number of minor males. In these chats, the Defendant would request sexually explicit photos from the minor males. The following images were recovered from the Defendant's iPhone:

(1) an image of the genitals of a minor male, John Doe 3, that was created on or about June 29, 2017; and
(2) five images of the genitals of a minor male, John Doe 5, that was created on or about August 29, 2017.

The Defendant sent an electronic mail message of a minor male, to wit John Doe 1, engaged in sexually explicit conduct to his email account emti1205@hotmail.com on or about April 26, 2015. Additionally, chats between the Defendant and involving either John Doe 2 (occurring between on or about May 30, 2017 and continuing until on or about June 18, 2017) and John Doe 4 (occurring between on or about July 17, 2017 and continuing until on or about September 1, 2017) show that the Defendant received sexually explicit images but the images themselves have not been recovered. In addition, the Defendant engaged in online chats with at least an additional nine minor males in which he either attempted to or did obtain sexually explicit photos at his request. One minor male was 13-years-old at the time the nude photos were exchanged.

All of the images and videos described in this statement of facts were on the above-referenced media which was manufactured outside the State of Maryland. In addition, the social media programs were accessed using the Internet, which involves the use of interstate and foreign commerce.

SO STIPULATED:

_____
Ayn B. Ducao
Assistant United States Attorney

_____ 11/7/18
Kenneth Brian Fischer
Defendant

_____ 11/7/18
Michael D. Montemarano, Esquire
Counsel for Defendant